# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

---

IVAN JOHNSON,

                  Plaintiff,

  v.                                                 OPINION and ORDER

BELINDA SCHRUBBE, NANCY GARCIA,              17-cv-332-jdp
and DONNA LARSON,

                  Defendants.

---

      Pro se plaintiff Ivan Johnson, a Wisconsin prisoner incarcerated at Columbia Correctional Institution (CCI), brings Eighth Amendment deliberate indifference and First Amendment retaliation claims against nurses at his previous prison, Waupun Correctional Institution (WCI). While at WCI, Johnson had stomach surgery, and after the surgery his surgeon prescribed diazepam to treat muscle spasms. Johnson alleges that defendants Belinda Schrubbe, Nancy Garcia, and Donna Larson withheld the medication because he had a pending lawsuit against Schrubbe.

      Defendants have filed a motion for summary judgment. Dkt. 17. They contend that Garcia made the decision to withhold diazepam not because she wanted to retaliate against Johnson, but because it is a controlled substance and because she determined it was not medically necessary. They say that the other defendants were not involved in the decision.

      I will grant defendants' motion in part. I will grant summary judgment for Schrubbe and Larson on both claims because Johnson has not produced any evidence showing that they were responsible for the denial of diazepam. And I will grant summary judgment for Garcia on the retaliation claim because Johnson has not produced any evidence that Garcia acted with a

retaliatory intent. But I will deny summary judgment for Garcia on the deliberate indifference claim because there is a material dispute regarding whether Garcia acted within the bounds of accepted professional judgment when she countermanded the surgeon's treatment orders.

Also before me is Johnson's motion for assistance in recruiting counsel. Dkt. 16. I am persuaded that the trial in this case will likely be too complex for Johnson to handle on his own, so I will grant his motion.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

In 2012, while incarcerated at WCI, Johnson filed a lawsuit against several prison employees, including Health Services Unit (HSU) manager Belinda Schrubbe. *See Johnson v. Sumnicht*, Case No. 12-cv-891-bbc (W.D. Wis. Dec. 6, 2012). That suit involved complications from a stomach surgery that Johnson had in 2010. He alleged that prison staff did not follow the surgeon's discharge orders, which caused ulcers and stomach erosion. The case settled in January 2015. Dkt. 87 ('891 case). The parties agree that Schrubbe never spoke to any inmates or other staff about the lawsuit. Dkt. 36, ¶ 48.

Nancy Garcia started working at WCI as a nurse practitioner in March 2014. As a nurse practitioner, Garcia works in collaboration with a unit physician who has overall responsibility for treatment decisions in the prison unit. She has the authority to prescribe medications. Unlike registered nurses, who work for the HSU and are supervised by the HSU manager, Garcia is employed by the Bureau of Health Services and supervised by the bureau's medical director. Dkt. 20, ¶ 5.

The parties dispute whether Garcia was aware of Johnson's lawsuit against Schrubbe. Garcia says that she had never heard of it until she received the complaint in this case. *Id.*, ¶ 29. But Johnson says that during his first appointment with Garcia on June 6, 2014, he spoke at length about the lawsuit and how he "suffered at the hands of" Schrubbe and other WCI staff.[1] Dkt. 31, ¶ 26. He says that Garcia listened to him for 10 to 15 minutes before telling him that "we are not here for that" and ending the appointment.

On August 15, 2014, while the '891 lawsuit was still pending, Johnson had a second stomach surgery to fix the complications from his first stomach surgery. Dr. Guilherme M. Rocha Campos performed the surgery at UW Health Hospital.

On September 30, Campos performed an upper endoscopy to check Johnson's progress following surgery. Johnson says that during this appointment, he talked with Campos about muscle spasms in his abdomen, and Campos recommended diazepam (known under the brand name as Valium). *Id.*, ¶ 10. But Campos received a phone call and had to leave the appointment, so he asked his resident, Dr. Lauren Taylor, to write the prescription. Taylor used Campos's prescription pad to write Johnson a prescription for ten tablets of diazepam, to be used "one time daily at bedtime as needed (muscle spasms)." Dkt. 22-1, at 87. She crossed out Campos's name and signed the prescription in her own name.

Campos did not mention muscle spasms or diazepam in his treatment notes. *See id.* at 78–81. His notes describe the results of the endoscopy and order additional follow-up appointments. But the only medications listed are the anesthetics used during the endoscopy. Taylor's prescription was attached to Campos's notes as a separate document.

---

[1] Johnson does not give a date for his first appointment with Garcia. But June 6 is the first time that her name appears in Johnson's medical records. Dkt. 22-1 at 26.

The next day, Johnson wrote a health services request asking to receive his prescribed medication. *Id.* at 146. Nurse Donna Larson reviewed the request and responded that the medication needed to be approved by a nurse practitioner. She explained to Johnson that the nurse practitioner had his record, and she ordered an appointment with Garcia within the next week. Because Larson is a registered nurse (rather than a nurse practitioner) she cannot prescribe medication herself, and her duties are limited to documenting and reviewing orders for medication made by advanced care providers like Garcia. Dkt. 36, ¶ 49–50.

On October 2, Garcia reviewed Campos's treatment notes and Taylor's prescription. WCI treats prescriptions from offsite doctors as recommendations, and Garcia has the authority to dismiss a recommendation based on security concerns or her review of the inmate's medical history. If the prescription is for a controlled substance, Garcia looks at the inmate's record and appointment notes to decide whether there is an actual need to distribute the substance.

Garcia decided to deny Johnson's prescription for diazepam. Although diazepam can be used to treat muscle spasms, it is a controlled substance and is highly addictive. Garcia believed that, in the past, other inmates had manipulated offsite providers to receive unnecessary medication. Dkt. 20, ¶ 19. And in this case, Campos did not mention the prescription in his treatment notes or sign the prescription himself. Johnson's medical records showed that he suffered from acid reflux and that he already had several prescriptions intended to treat acid reflux and other stomach-related pain but refused to take those medications.[2] Although none

---

[2] Johnson disputes whether he refused to take medication, and he argues that the records are inaccurate because correctional officers were inconsistent about recording when they passed out medication. Dkt. 36, ¶ 30. But it is undisputed that the records, whether accurate or not, show that Johnson did not take his medication.

4

of those drugs treated muscle spasms, Garcia could not find any records that said Johnson's pain was caused by muscle spasms. So she denied the prescription for diazepam, and she did not prescribe an alternative drug to treat muscle spasms.

When Johnson did not receive diazepam, he sent another health service request asking for his prescription. Dkt. 22-1, at 152–58. He explained that:

> I was told by the surgeon that it will take a longer time for my body to heal on the inside due to all the scar tissue from the previous surgery and that the muscle spasms are due to having to cut through scar tissue the second time and there are nerves that will take maybe four to six months or more to heal and the pain and spasms should go away . . .
>
> the doctor explained that he would send some medication a low dose that will help me for a short time and will reevaluate me on the next visit.

*Id.* at 153–55. Schrubbe received this request on October 6, and she responded to it the same day. *Id.* at 152. She said that she would schedule an appointment with Garcia within the next week.

Johnson also asked his lawyer from the '891 case for help getting the medication, and his lawyer contacted the assistant attorney general representing Schrubbe. On October 8, the assistant attorney general emailed the prison. A prison official responded that she talked with HSU staff, and that HSU staff would check to see what medication Johnson might be missing. Dkt. 31-3.

On October 9, Johnson had an appointment with Garcia. The parties dispute what happened during the appointment.[3] Garcia says that she met with Johnson only to explain the

---

[3] Johnson says that this appointment was recorded on officer Lundee's body camera, and that he asked defendants to save the video. Dkt. 32, ¶ 20. But neither party has provided a video, and defendants have not responded to Johnson's claim that a video exists. Dkt. 35, ¶ 20.

5

results of his endoscopy. She says that she does not remember Johnson complaining about muscle spasms or seeking medication, and that if he had, she would have written it down in his treatment notes. Dkt. 20, ¶ 27. Johnson says that HSU made the appointment specifically to address his complaints about not receiving medication. He points to his prior health service requests and the emails from October 8 as evidence that Garcia knew about his complaints. He also says that during the appointment, he told Garcia that he did not care what medication he received, so long as it treated muscle spasms. Dkt. 31, ¶ 21. Whatever happened at the appointment, the parties agree that Garcia did not authorize diazepam or prescribe any other medication after the October 9 appointment.

The parties also dispute whether Nurse DeYoung, who is not a defendant in this case, made comments to Johnson about the '891 case. Johnson says that sometime in October, he complained to Nurse DeYoung about not receiving his diazepam prescription. Dkt. 36, ¶ 53–54. He says that DeYoung replied, "That's what happens when you sue people and you haven't seen nothing yet!" *Id.* Defendants contend that there is no evidence of DeYoung's comments except for Johnson's hearsay testimony. The parties agree that none of the defendants made similar comments.

In January 2015, Johnson was transferred to CCI. On February 4, he had an appointment with a physician's assistant at UW Health. Johnson complained that he suffered from muscle spasms, and that had been prescribed diazepam but never received it. The physician's assistant diagnosed Johnson with abdominal spasms and prescribed dicyclomine. Dicyclomine treats muscle spasms, but it is not habit-forming like diazepam. The HSU staff at CCI approved that prescription.

ANALYSIS

A.  Defendants' motion for summary judgment

Defendants are entitled to summary judgment only if they can show that there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When ruling on a motion for summary judgment, I must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If no reasonable juror could find for the nonmoving party based on the evidence in the record, then summary judgment is appropriate. *Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996 (7th Cir. 2018) (citations omitted). But if there is any evidence that would allow a reasonable jury to return a verdict for the nonmoving party, then summary judgment is not appropriate. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). (citations omitted).

   1.  Deliberate indifference claims

Johnson contends that defendants were deliberately indifferent to his need for medication to treat muscle spasms. To succeed on a deliberate indifference claim, Johnson must show that (1) he had a serious medical need; and (2) defendants were deliberately indifferent to that medical need. *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). Defendants concede that Johnson's muscle spasms were a serious medical need. So the only issue is whether each defendant was deliberately indifferent to Johnson's need for treatment.

For a defendant to be deliberately indifferent to a medical need, the defendant must know of the need and disregard it. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is more than mere negligence. If, as here, the plaintiff challenges a decision made by a medical professional, then the plaintiff must show that the defendant's treatment decision

was "'such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.'" *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016), *as amended* (Aug. 25, 2016) (quoting *Cole v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996)). An unreasonable delay in treating a non-life-threatening but painful condition may demonstrate deliberate indifference if the delay unnecessarily prolonged an inmate's pain. *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). If a specific treatment cannot be given to a prisoner due to security concerns, then the prison's medical staff must explore alternative treatments that are available. *Arnett*, 658 F.3d at 753.

The primary dispute in this case is whether Garcia's initial decision to deny Johnson diazepam was based on accepted professional judgment. On one hand, Garcia, a nurse practitioner, declined to follow a prescription from the office of Johnson's treating surgeon, Dr. Campos. And a prison medical professional's refusal to administer medication prescribed by a treating specialist is evidence that she did not base her decision on medical judgment. *See Petties*, 836 F.3d at 729 (citing *Arnett*, 658 F.3d at 753 (7th Cir. 2011) and *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999)); *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002). But on the other hand, Garcia says that she carefully considered whether the prescription for diazepam was medically necessary. The prescription was signed by Dr. Taylor, rather than Johnson's surgeon, Dr. Campos. And Campos's treatment notes did not mention muscle spasms or a need for diazepam, but they did show that Johnson had discomfort from acid reflux. Garcia says that she believed that acid reflux was the actual cause of Johnson's pain, and she noted that prison records showed that Johnson had refused to take his acid reflux medication. She contends that she exercised her medical judgment when she declined to follow Taylor's prescription.

8

Because of this dispute, I will deny summary judgment on Johnson's deliberate indifference claim against Garcia. I cannot simply credit Garcia's stated rationale for her decisions and dismiss the case. The rationale behind her decision to countermand Johnson's treating surgeon, and whether that decision was based on professional medical judgment, are issues of fact that will need to be decided by the jury. *See Walker*, 293 F.3d at 1040 (whether defendants chose to deny plaintiff's painkiller prescription because of a good-faith belief that he was malingering was an issue for the jury). Garcia may have been confused about why the prescription was signed by Taylor, rather than Campos. But a jury could conclude that she should have consulted with Campos, Taylor, or the unit physician before denying the prescription without providing an alternative.

Likewise, a reasonable jury could conclude that even if Garcia's initial decision to deny diazepam was reasonable, she should have reassessed that decision after her appointment with Johnson on October 9. Garcia says that she decided that diazepam was medically unnecessary in part because she did not know that Johnson had muscle spasms. But Johnson produces evidence that he repeatedly complained about muscle spasms before and during his October 9 appointment with Garcia. Dkt. 22-1, at 153–55; Dkt. 31-3; Dkt. 31, ¶ 21. So a jury could conclude that Garcia became aware of Johnson's need for a drug to treat muscle spasms after that appointment.

Defendants contend that even if Garcia was deliberately indifferent, she is entitled to qualified immunity. But as Johnson points out, this case is one of the many Eighth Amendment cases where the merits of the claim and the question of qualified immunity "effectively collapse into one." *See id.* at 1037. And defendants seem to agree, as their only argument in support of qualified immunity is that "there is nothing in the record to establish that defendants . . . were

deliberately indifferent in their medical treatment of Johnson." Dkt. 18, at 21. But there is a genuine dispute regarding whether Garcia was deliberately indifferent, and that dispute equally applies to defendants' assertion of qualified immunity. So Garcia is not entitled to summary judgment on the basis of qualified immunity.

But I will grant summary judgment for Schrubbe and Larson. Johnson has not produced any evidence that Larson was involved in the decision to deny him medication, and he concedes that Larson had no authority to countermand Garcia's decisions. Larson's only involvement in this case was to review the complaint that Johnson wrote on October 1, before Garcia decided to deny the medication. And Larson did not turn a blind eye to Johnson's complaint. She responded by directing his concerns to Garcia so that Garcia could make an initial determination.

As for Schrubbe, Johnson argues that because Schrubbe is a licensed nurse practitioner, she could have intervened and written her own prescription for Johnson. But even if Schrubbe had the authority to override Garcia's decisions (defendants say she didn't), Johnson has not produced evidence that Schrubbe responded to his complaints with deliberate indifference. When Johnson complained to Schrubbe that he had not yet received his medication, she forwarded his complaints to Garcia. There is nothing to suggest that Schrubbe had reviewed Johnson's medical records or knew that Garcia was countermanding Dr. Campos's prescription. Even viewing all facts in the light most favorable to Johnson, it was reasonable for Schrubbe to defer to Garcia regarding his treatment.

2. **Retaliation claims**

Johnson contends that defendants denied him medication in retaliation for his pending lawsuit against Schrubbe. To prevail on his retaliation claims, Johnson must prove three

elements: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in defendants' decisions to take those actions. *McGreal v. Village of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017).

Johnson concedes that he cannot prove that defendants refused to treat him in retaliation for his lawsuit. Dkt. 28, at 7. But he argues that their actions still had the *effect* of pressuring him to end his lawsuit. But this does not save his claim from summary judgment. Even if defendants' actions did in fact cause him to settle his lawsuit, Johnson still must prove that defendants were motivated at least in part by a retaliatory intent.

There are only two pieces of evidence that connect Garcia to Johnson's lawsuit, and neither would allow a reasonable jury to conclude that Garcia was motivated by a retaliatory intent. First, Johnson says that he told Garcia about his lawsuit during his first appointment with her, about five months before he received the prescription for diazepam. But Garcia's alleged knowledge of the lawsuit does not necessarily mean that it motivated her decision to deny him diazepam. And although there may be times when a protected activity and an adverse reaction are so close in time that a jury may reasonably infer that the two are linked, those situations are typically limited to when the two events are "no more than a few days" apart. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). Five months is far too long for a jury to infer that Garcia was motivated by her conversation with Johnson about the lawsuit.

Second, Johnson says that when he complained to Garcia's coworker, Nurse DeYoung, she told him, "That's what happens when you sue people and you haven't seen nothing yet!" Dkt. 36, ¶ 53–54. But even if this statement were admissible at trial (defendants object that

11

it's hearsay), it still wouldn't tell the jury anything about how *Garcia* felt. There is no evidence that Garcia knew about this statement, let alone endorsed it.

As for Schrubbe and Larson, they are entitled to summary judgment for the same reasons that I granted them summary judgment on the deliberate indifference claims. Johnson has not produced any evidence showing that either of them were involved in the decision to deny him medication, nor is there evidence that they somehow influenced Garcia's decision making. Although Schrubbe may have had a motive to retaliate against Johnson, she was not Garcia's supervisor and she did not talk to Garcia about the lawsuit.

So I will grant summary judgment for all defendants on the retaliation claims. And because I have granted summary judgment for all claims against Schrubbe and Larson, they will be dismissed from the case.

**B. Recruitment of counsel**

Johnson moves for assistance in recruiting counsel. Dkt. 16. For me to grant his motion, Johnson must show that (1) he has made reasonable efforts to find counsel on his own; and (2) this is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds the plaintiff's ability to prosecute it. *Pruitt v. Mote*, 503 F.3d 647, 654, 655 (7th Cir. 2007) (en banc).

Johnson satisfies the first requirement because he has attached three letters that he wrote asking lawyers to represent him. And I am persuaded that he has met the second requirement, because this case involves the types of issues that the Court of Appeals for the Seventh Circuit has suggested would benefit from recruitment of counsel or appointment of a medical expert. *See, e.g., Perez v. Fenoglio*, 792 F.3d 768, 785 (7th Cir. 2015) (litigation is "even

more challenging in cases, like Perez's, where complex medical evidence (including expert testimony) is needed to assess the adequacy of the treatment received").

So I will grant Johnson's motion and strike the remaining schedule. A new schedule will be set after counsel is located.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 17, is DENIED with respect to Johnson's Eighth Amendment claim against Nancy Garcia. The motion is GRANTED in all other respects.

2. Defendants Belinda Schrubbe and Donna Larson are DISMISSED from the case.

3. Plaintiff Ivan Johnson's motion for assistance in recruiting counsel, Dkt. 16, is GRANTED. All remaining deadlines are STRUCK and the case is STAYED pending recruitment of counsel for Johnson. If I find counsel willing to represent Johnson, I will advise the parties of that fact. Soon thereafter, a status conference will be held to set a new schedule. Johnson is advised that because of the large number of requests for counsel that the court receives, the search for counsel may take several weeks or even months and there is no guarantee that the court will find counsel willing to represent him.

Entered January 23, 2019.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge